UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MELODY RAINEY,

        Plaintiff,

v.                               Case No.  8:23-cv-931-VMC-SPF

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the undersigned recommends the Commissioner's decision be affirmed.

### I.    Procedural Background

Plaintiff applied for a period of disability and DIB on September 16, 2020 (Tr. 254-58).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 140-49, 151-60).  Plaintiff then requested an administrative hearing (Tr. 161-62).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 81-111).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denied Plaintiff's claim for benefits (Tr. 11-19).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-7).

Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1960, claimed disability beginning November 1, 2018 (Tr. 275).  Plaintiff has a bachelor's degree in accounting, and from 2010 through her alleged onset date of November 1, 2018, Plaintiff was promoted through the ranks of the accounting department at the University of South Florida: she worked first as a budget manager, then as a manager of fiscal and business administration, next she was promoted to associate director of accounting, and finally, her most recent position was as the director of accounting for USF's Division of Student Affairs, with a staff of employees reporting to her (Tr. 86-87).  Before she worked at USF, Plaintiff worked as a sales support representative for Verizon Wireless (Tr. 88).   Plaintiff alleged disability due to diabetes, high blood pressure, and back pain (Tr. 114).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2025, and had not engaged in substantial gainful activity since November 1, 2018, the alleged onset date (Tr. 14).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had these severe impairments: degenerative disc disease, diabetes mellitus, and hypertension (*Id*.).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id*.).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to

perform light work "except the claimant can frequently crawl, crouch, and kneel.  The claimant can no more than occasionally stoop, climb ramps, stairs, ladders, rope, or scaffolds.  The claimant should not work around hazards, such as unprotected moving machinery or unprotected heights." (Tr. 15).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 18).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could perform her past relevant work as a director, associate director, and customer service representative clerk (Tr. 19).  Based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. *Id.*).

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which will likely result in death or which has lasted or will likely last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.  Analysis

Plaintiff alleges the ALJ failed to properly evaluate the opinions of Plaintiff's primary care doctor and the agency's consultative examiner and did not adequately consider Plaintiff's subjective pain complaints (Doc. 15). The Commissioner disagrees (Doc. 19). The Court has considered Plaintiff's arguments and finds they do not require remand.

### A.  Drs. Roetzheim and Syed

Plaintiff's first argument is that the ALJ did not properly evaluate the opinions of her primary care doctor Richard Roetzheim, M.D. and the agency's consultative examiner Asma Syed, M.D. Specifically, Plaintiff contends the ALJ did not comply with

20 C.F.R. § 404.1520c, the Social Security Administration ("SSA") regulation that requires an ALJ to articulate the persuasiveness of medical opinions considering a variety of factors, the most important of which are supportability and consistency.  Embedded in Plaintiff's argument is her contention that the ALJ erred in assigning more persuasive value to the prior administrative findings of state agency physicians Elizabeth Estrada, M.D. and Philip Matar, M.D. (Doc. 15).  The Commissioner counters that the ALJ's decision is supported by substantial evidence and points out that, despite citing the controlling regulations, Plaintiff relies on case law that applies a prior version of the regulations (Doc. 19).

Before March 27, 2017, Social Security Administration ("SSA") regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause.  *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178–79 (11th Cir. 2011).  Here, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed her claim in September 2020 and alleged disability beginning November 1, 2018 (*see* Tr. 11).  The revised regulations eliminate the treating physician rule.  *See Harner v. Comm'r of Soc. Sec.*, 38 F.4th 892, 897 (11th Cir. 2022).

The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  As to each

medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-

1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions.  An ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020).  While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[1]  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source.  *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  In general. "[c]ourts recognize the new regulations erect a framework that is highly deferential to the Commissioner." *Anthony v. Kijakazi*, No. CV-120-110, 2021 WL 4304725, at *4 (S.D. Ga. Sept. 3, 2021), *report and recommendation adopted*, 2021 WL 4304721 (N.D. Ga. Sept. 21, 2021).

On June 18, 2020, Dr. Roetzheim completed a multiple impairment questionnaire and a diabetes impairment questionnaire, writing that Plaintiff suffered from diabetes, hypertension, lumbar radiculopathy, hyperlipidemia, and anxiety/stress (Tr. 730-34).  He

---

[1] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue.  *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

opined that Plaintiff could sit for a total of two hours in an 8-hour workday, stand for a total of two hours, must elevate her legs every hour for 20 minutes, and will need a 10-minute unscheduled break every 30 minutes (*Id.*).  Plaintiff could frequently carry up to five pounds, occasionally carry up to 20 pounds, but never carry more than that, and she had no limitations on reaching, handling, or fingering (*Id.*).  Dr. Roetzheim stated that pain and fatigue would frequently interfere with Plaintiff's attention and concentration at work (*Id.*).  Specific to Plaintiff's diabetes, Dr. Roetzheim classified Plaintiff's prognosis as fair and listed her symptoms as chest pain and tachycardia, poor concentration, fatigue, and stress/anxiety (Tr. 735).  Stress increases Plaintiff's blood sugar, Dr. Roetzheim opined, which increases the likelihood of Plaintiff experiencing blurry vision, numbness in her feet, and other symptoms (Tr. 739).

The ALJ considered the two questionnaires together and found that Dr. Roetzheim's opinion on "lifting is generally persuasive, but the rest of the opinion is not persuasive, as it is not supported with evidence relied upon in formulating these limitations." (Tr. 18).  The ALJ continued:  Dr. Roetzheim's "opinions as to [Plaintiff's limitations] are wholly inconsistent with the claimant's physical symptoms, physical examinations, diagnostic testing, and physical therapy notes throughout the period of alleged disability." (*Id.*).

Meanwhile, Dr. Syed conducted a consultative exam of Plaintiff in May 2021 and observed that Plaintiff's diabetes and hypertension were "fairly well controlled on medications" but she suffered "chronic mid and low back pain with radiations into the lower extremities." (Tr. 1154).  She opined that Plaintiff "needs intermittent periods of

rest in between sitting, standing and walking. Lifting abilities and carrying may be limited up to 20 pounds secondary to pain. . . Sustained concentration may be impaired secondary to the pain." (*Id*.). The ALJ found Dr. Syad's opinion "as to the 20 pounds [lifting] restriction is generally persuasive, but again the other limits of the opinion are not persuasive, as they are not supported with physical examination and her clinical observation on exam." (Tr. 18). Dr. Syad's opinion was "inconsistent with [Plaintiff's] physical symptoms" and the medical evidence (*Id*.).

In contrast, the ALJ found the prior administrative findings of non-examining state agency physicians Elizabeth Estrada, M.D. and Philip Matar, M.D. to be more persuasive than those of Drs. Roetzheim and Syad. Dr. Estrada reviewed the medical evidence through August 2021 and opined Plaintiff was capable of light work. Dr. Matar opined in May 2021 that Plaintiff could perform light work with additional limitations. The ALJ held that Drs. Estrada and Matar's RFC assessments were supported by the evidence and "mostly consistent" with Plaintiff's subjective complaints and medical history (Tr. 17).

Plaintiff argues the ALJ did not adequately articulate how he evaluated this opinion evidence, rendering the Court unable to "trace the path" of the ALJ's reasoning (Doc. 15 at 13-14). The Court disagrees. For context, since 2015, Dr. Roetzheim has treated Plaintiff for back pain, hypertension, and type 2 diabetes approximately every three to six months. The origins of Plaintiff's alleged disability date back to November 12, 2018, and her appointment with Melanie Molligan, a physician's assistant in Dr. Roetzheim's office. Plaintiff admitted to Ms. Molligan she was stressed at work and had experienced chest pains for about a week (Tr. 788-91). "[T]he pain has been persistent but its severity

has waxed and waned." (Tr. 788). Exertion aggravated it, and rest alleviated it. She described a "funny feeling" in her left shoulder and leg and felt more fatigued than usual (Tr. 790).

Her physical exam was normal but considering Plaintiff's complaints of chest pains and her history of hypertension, Ms. Molligan administered an EKG. The results were normal. She wrote: "Despite lack of evidence of acute coronary syndrome of EKG, given persistence of symptoms combined with the presence of hypertension and [type 2 diabetes], acute coronary syndrome can not effectively be ruled out." (Tr. 791). As a precaution, Ms. Molligan advised Plaintiff to go immediately to the emergency room at Tampa General Hospital (*Id.*).

Plaintiff did so later that afternoon. She described her chest pain to ER personnel as a "heaviness that worsens with exertion and improved with rest." (Tr. 369) She was fatigued and nauseous. Another EKG administered in the ER revealed "no ischemic findings," and her "initial troponin [test was] negative, chest x-ray negative." (*Id.*). Plaintiff had a regular heart rate with no gallop, no edema, and good pulses in all extremities (Tr. 370). A positive stress test, however, prompted cardiac catheterization, which was negative. In short, TGH doctors did not find evidence of active cardiopulmonary disease (Tr. 385). By November 14, 2018, Plaintiff was "cleared for discharge from cardiology standpoint" (Tr. 370) and doctors advised her to resume activities as tolerated and monitor her blood pressure (Tr. 400).

Next, Plaintiff had her annual exam with Dr. Roetzheim on January 28, 2019. The physician characterized Plaintiff's insulin-dependent type 2 diabetes as "not well

controlled." (Tr. 780). "Patient endorses a high stress job that has made managing her chronic conditions difficult. She has been taking leave since mid-December which has helped with her chest pain and allows for her to focus more on her diabetes management." (*Id.*). Plaintiff told Dr. Roetzheim she had "increased the amount of exercise she is getting and is focusing on cleaning up her diet." (*Id.*). Her blood pressure was slightly elevated but stable on medication (Tr. 781). Regarding Plaintiff's ER visit for chest pains, Dr. Roetzheim wrote, "[h]igh stress levels at work indicated an anxiety/panic etiology[.]" (*Id.*). Plaintiff's physical exam was normal. Dr. Roetzheim continued Plaintiff on her medications, advised her to focus on diet and exercise, and renewed her leave forms for one more month (Tr. 786).

Plaintiff returned on February 4, 2019 for a follow-up and stated "[s]he needs FMLA paperwork completed. . . She is under tremendous stress and [has] not been able to work because of this intense stress." (Tr. 775). Plaintiff had poorly controlled diabetes, stable hypertension, and she agreed to meet with a pharmacologist to help with diabetes management (Tr. 779). Plaintiff did not see Dr. Roetzheim again until July 29, 2019, when she reported she "has been doing overall better with her diabetes in the past 6 months, especially since she quit her stressful job. After taking medical leave, she decided not to return." (Tr. 770). She "has been doing better with balanced, low-sugar diet and exercise[,]" and Dr. Roetzheim's pharmacology clinic had helped her manage her medications and insulin levels (*Id.*). Her physical exam and blood pressure were normal, and her chest pains had "completely resolved[.]" (*Id.*).

At her next appointment on January 13, 2020, Plaintiff's diabetes was "doing great" with "no hypoglycemic episodes" (Tr. 761). Her hypertension was well controlled, she had no headaches or chest pains, and her physical exam was normal. Instead of advising Plaintiff to follow up with him in three months, Dr. Roetzheim suggested a six-month interval between appointments (which is what Plaintiff had been doing for the past year anyway) (Tr. 767).

Meanwhile, Covid precautions moved appointments online, and Plaintiff's next appointment on June 18, 2020 occurred remotely (Tr. 755). Dr. Roetzheim's treatment notes state Plaintiff's diabetes is "under better control" and her hypertension has "been controlled" and "doing well." (Tr. 755-56). Dr. Roetzheim characterized the appointment as a disability assessment and wrote:

> [Plaintiff] has 2 conditions that are leading to her disability. One is that she has diabetes and the stresses of her job send her blood sugar spiking and she will develop a lot of symptoms related to her diabetes including blurry vision, fatigue, and a racing heartbeat. She also has disabling pain from a low back problem, she has had L3-L4 disc herniation and this has caused her radicular symptoms with pain and radiation down the leg affecting her toes and causing numbness. . . . She often has to change position and it is very uncomfortable and she is unable to get through a work week.

(Tr. 755). As always, her physical exam was normal. Afterwards, Dr. Roetzheim completed his multiple impairment questionnaire (Tr. 730-34) and the more specific diabetes impairment questionnaire (Tr. 735-41).

Next, Plaintiff had a telehealth appointment with Dr. Roetzheim's pharmacology clinic on August 10, 2020 (Tr. 799). Wendy Updike, Pharm.D. stated: "Of note, [Plaintiff] has not been seen for a follow-up visit with me since 11/2019, but did not give a specific reason as to why." (*Id.*). Plaintiff's diabetes was "slightly uncontrolled." (Tr. 801). Her

fasting blood glucose concentration was within her goal, but her blood glucose level was slightly above it (*Id.*).  Plaintiff's diet was "mostly healthy overall," and she "meets or exceeds her goal of 5,000 steps per day" about 95% of the time (Tr. 747).  Ms. Updike's findings were the same at Plaintiff's October 5, 2020 telehealth visit (Tr. 748).

Dr. Syed enters the picture on May 5, 2021, when she examined Plaintiff at the agency's request (Tr. 1151-57).  Plaintiff complained primarily of back pain to Dr. Syed, stating she feels it "across the back but [it] goes into the calves with tingling numbness in the feet. . . . Rates the pain as 8 out of 10, sharp burning and numbing in nature.  Present all the time[.]" (Tr. 1151).  Her physical exam was normal save tenderness and a limited range of motion in her lumbar spine (Tr. 1153).  Dr. Syed opined Plaintiff "needs intermittent periods of rest in between sitting, standing and walking. Lifting abilities and carrying may be limited up to 20 pounds secondary to pain. . . Sustained concentration may be impaired secondary to the pain." (*Id.*).

One month later, on June 17, 2021, Plaintiff had another telehealth follow-up with Dr. Roetzheim (Tr. 1161).  The physician wrote that Plaintiff's diabetes was "currently doing well" and "she is doing a good job trying to follow a low-carb diet and getting exercise." (Tr. 1165).  Her biggest problem was her back pain, which persisted despite six weeks of physical therapy (Tr. 1162).  Dr. Roetzheim prescribed a lumbar MRI "and would like to get neurosurgical opinion as well given her lack of improvement with physical therapy and conservative measures." (Tr. 1165).  The July 2021 MRI revealed "moderate spinal stenosis at L4-L5 due to combination of degenerative changes" and no acute fracture or boney lesion (Tr. 1202).

Per Dr. Roetzheim's advice, Plaintiff returned to physical therapy in October 2021. By her third visit, Plaintiff "report[ed] she now wakes up with no pain which she is very happy about.  Pt notes most difficulty with mopping, lifting, laundry, and vacuuming." (Tr. 1248).   Plaintiff also treated with a neurosurgery practice associated with Dr. Roetzheim's USF practice.   Laura Pulido, a neurosurgery nurse practitioner, treated Plaintiff in December 2021 and noted that Plaintiff had been attending physical therapy again, "which she states has made a significant improvement in her lower back pain as well as continues to take gabapentin which also helps her leg pain.  She reports she is currently walking 3 miles but does continue to experience positive pressure in her lower back." (Tr. 1230).

Against this medical backdrop, Plaintiff contends the ALJ ignored the regulations in evaluating Drs. Estrada, Matar, Roetzheim, and Syad's opinions.  Putting aside that Plaintiff relies on case law that applies the prior version of the regulations – including the now-supplanted treating physician rule – the record does not support Plaintiff's argument. At root, Plaintiff's challenges the ALJ's rejection of the RFC limitations Drs. Roetzheim and Syad assessed.   But a claimant's RFC is a formulation reserved for the ALJ, not Plaintiff's treating or consultative physicians.  *See* 20 C.F.R. § 404.1546(c).  And the ALJ, of course, must support his or her findings with substantial evidence.  *See Beegle v. Comm'r of Soc. Sec. Admin.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 926 (11th Cir. 2010) (the assessment of a claimant's RFC and

corresponding limitations are "within the province of the ALJ, not a doctor").  An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence.  *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; the ALJ cannot point to evidence that supports the decision but disregard other contrary evidence).  Plaintiff does not challenge her RFC assessment.

Instead, Plaintiff contends the ALJ failed to articulate both the supportability and consistency of Drs. Roetzheim and Syad's opinions.  But this misses the mark.  The ALJ found: (1) neither doctor supported his or her assessment of Plaintiff's limitations with evidence culled from their respective observations and findings; and (2) the record did not support the limitations they assessed. Before making this finding, the ALJ reviewed the medical evidence (summarized above) and cited specific pages within these records. "There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" *if* substantial evidence supports the conclusion that the ALJ considered the claimant's condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Here, it does.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *4-5 (M.D. Fla. Aug. 6, 2021) (finding ALJ properly evaluated persuasiveness of doctor's opinion, even though ALJ did not use the words 'supportability' and 'consistency,' because ALJ addressed the medical records, cited the doctor's opinions, and found it opinion inconsistent with clinical notes), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

In opining that Plaintiff can perform light work with some postural and environmental limitations, Dr. Estrada reviewed medical records through August 2021,

over a year after Dr. Roetzheim's medical questionnaires and three months after Dr. Syed's consultative exam.   In his May 2021 administrative finding, Dr. Matar also considered Drs. Roetzheim and Syad's opinions.   The ALJ reviewed Plaintiff's medical records, including those from late 2021 through 2022 (which post-date Drs. Estrada and Matar's opinions and demonstrate that Plaintiff's back pain improved with physical therapy), and found the state agency physicians' administrative findings more persuasive in formulating Plaintiff's RFC for light work with limitations.   Plaintiff's first argument fails.

### B.   Plaintiff's subjective complaints

Next, Plaintiff contends the ALJ overlooked Plaintiff's testimony that returning to full-time work will increase her stress and trigger her disabling symptoms (Doc. 15).   In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence.   20 C.F.R. §§ 404.1529(a), 416.929(a). Once a claimant establishes that his pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 155 (11th Cir. 2021) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints.   The standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical

evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). If an ALJ rejects a claimant's subjective testimony, he must articulate explicit and adequate reasons for his decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate, are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. §§ 404.1529, 416.929. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1513, 416.913. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

Here, Plaintiff testified that her two-day hospital stay in November 2018 for chest pains was an eye-opener.  She realized the stress and anxiety from her job wreaked havoc on her diabetes symptoms and back pain.  Although she eventually returned to work part-time after she was discharged, the job was manageable because she decreased not only her hours but her job responsibilities.  But she could not return to her new, lower stress job full-time, she testified, because "an accounting position, it doesn't matter which level, there's a certain amount of work involved . . . I would need to work 40 hours a week . . . the amount of stress, it triggers problems with my diabetes.  It triggers problems with my blood pressure.  It triggers problems with my back." (Tr. 91-92).  She testified she cannot sit at a computer for more than 30 minutes (Tr. 92).  Although Plaintiff walks three miles twice a week for exercise, she testified she cannot twist or bend without triggering intense pain (Tr. 95-96).  By her characterization, her blood sugar levels have not improved and, when they are low, she finds it hard to concentrate (Tr. 99).

Here, the ALJ relied on largely boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are less than fully persuasive . . . [and are] weakened by inconsistencies between her allegations and the medical evidence of record.

(Tr. 18).  This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence.  *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013).

Here, it is.  The ALJ stated: "The claimant alleged to have chest pain symptoms, stress, fatigue, other joint issues and limited mobility." (Tr. 15).  Plaintiff "reported shifting positions, needing breaks, and can walk but has to rest after 30 minutes.  She alleged to walk two times per week up to three miles." (*Id.*).  The ALJ also acknowledge Plaintiff's testimony that she has "pain with twisting and bending." (*Id.*). She struggles with "concentration and sleep due to pain symptoms" and testified she could perform household chores but is in pain for several hours afterwards. (*Id.*). Her diabetes causes chest pain and fatigue (Tr. 15-16).  Nonetheless, the ALJ concluded:  "Despite these allegations, the evidence indicates she maintains the ability to perform numerous tasks. Overall, the undersigned finds that although the claimant may have limits in the type of work she can perform, the objective findings below do not support the claimant's allegations of an inability to do all work." (Tr. 16).

In reaching this finding, the ALJ considered the objective medical evidence (discussed above), including Dr. Roetzheim's findings (and those of Plaintiff's USF medical team) that Plaintiff's diabetes and blood pressure were generally well controlled with medication, diet, and exercise; her chest pains had resolved; and physical therapy had improved her back pain.  The ALJ also considered Plaintiff's daily activities, which according to the medical records (in contrast to her testimony) involved walking 5,000 steps per day 95% of the time and performing most household chores without assistance.

At this point, the Court reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S.

___; 139 S.Ct. 1148, 1154 (2019).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.*  In other words, the Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  With this standard in mind, after considering the entire record, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's allegations of subjective pain.

**V.      Conclusion**

For the foregoing reasons, it is RECOMMENDED:

1.      The decision of the Commissioner be AFFIRMED.

2.      The Clerk be directed to enter final judgment for the DEFENDANT and close the case.

IT IS SO REPORTED in Tampa, Florida, on August 1, 2024.


_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

21

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.